**Joshua Stoner and J. C. Seyster v. Peter S. Good, for the use of Michael Kelly.**

1. CHATTEL MORTGAGES—*Rights of Mortgagee Strictly Construed.*—A mortgagee of chattels, taking a new mortgage on the same property for the same debt, surrendering the old one and extending the time of payment, estops himself from proceeding on the first, and loses his lien by reason of it; his rights are to be strictly construed.

Debt, on a replevin bond. Trial in the Circuit Court of Ogle County; the Hon. JAMES A. BAUME, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendants. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

J. C. SEYSTER, attorney for appellants, contended that

as the first note given matured on Saturday, March 28th, the maker had that entire day to pay it, and Stoner had no right to take the property on that day because there was no default.

The day following its maturity being Sunday, the mortgagee was not required to take possession of the property until Monday, which he did. Arnold v. Stock, 81 Ill. 407.

If the new note and mortgage had not been given and old note and mortgage surrendered, clearly, mortgagee would have had the right to take this property on Monday, and having taken it would have had the right to hold it as against the executions in the constable's hands.

But the mortgagor by his new mortgage represented and covenanted that the property was free from all incumbrances, which representation he knew was false, and hence it was in law fraudulent, and being fraudulent, the mortgagee had the right to rescind the contract whereby new note and mortgage were given, and old ones surrendered, which he did without objection from mortgagor, but with his consent.

A contract whereby property or rights are procured by fraud, are voidable except as to *bona fide* purchasers for value without notice of the fraud.

An attaching or judgment creditor whose debt was contracted prior to the making of such contract is not a *bona fide* purchaser, and does not stand in the position of an innocent purchaser, and has no greater rights in the property than the debtor has. Schweizer v. Tracy, 76 Ill. 345; 8 Am. Dec. 97.

A mortgagor does not lose his priority over intervening rights by taking new mortgage for same debt, giving new note and mortgage, and releasing old one. Campbell v. Trotter, 100 Ill. 281; Shaver v. Williams, 87 Ill. 469.

FRANCIS BACON and W. J. EMERSON, attorneys for appellee.

If after default in the terms of a mortgage the mortgagee takes a new note not payable at a later day than mentioned

in the first, and a new chattel mortgage upon the same property, then the new securities are a payment and satisfaction of the old, and the first mortgage is thereby extinguished, and any intermediate mortgage there may be upon the property takes precedence of the new note and mortgage. Daly v. Proetz, 20 Minn. 411; Butler v. Miller, 1 Den. (N. Y.) 407; Paul v. Hayford, 22 Me. 234.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Certain parties obtained judgments before a justice of the peace of Ogle county against Daniel B. Wagner and others, and caused executions to be issued for the collection of said judgments, and placed them in the hands of Michael Kelly, a constable. Kelly levied said executions upon certain cattle, hogs and clover seed, as the property of Wagner. Joshua Stoner sued out a writ of replevin to recover said chattels, and gave a replevin bond to Peter S. Good, the sheriff. Stoner obtained the property, but permitted his suit to be dismissed, and there was a judgment against him for nominal damages and a return of the property. He did not return the property. This is a suit upon said replevin bond. Defendants pleaded *non est factum*, and also property in Stoner and not in Kelly, and that the merits were not tried in the replevin suit. Upon a jury trial there was a verdict for plaintiff for the penalty of the bond as debt and $350 damages. Judgment was entered in due form, and defendants appeal.

Wagner owed Stoner a note, secured by a mortgage upon the chattels in controversy. The unpaid part of the debt came due March 28, 1896, which was Saturday. Upon the following Monday, March 30th, Wagner and Stoner agreed upon an extension of the debt for four months. A new note was prepared, due in four months, and a new mortgage upon said chattels to secure it. They were each dated back to March 28th, and were signed by Wagner. The justice before whom the new mortgage was acknowledged, and who entered it upon his docket, dated the acknowledg-

ment back to the 28th. This new note and mortgage were drawn and delivered in the circuit clerk's office, and at once filed for record, in the forenoon of Monday, the 30th. Stoner then delivered the original note and mortgage to Wagner and the latter went home to his farm. Meanwhile, on March 21, 1896, the judgments against Wagner, above referred to, had been obtained on, March 23d executions under said judgments had been placed in the hands of Kelly, and, according to his return, that officer delivered Wagner copies of the executions on the same day. An hour or more after the new mortgage had been filed for record, and the old note and mortgage surrendered, Kelly met Stoner and told him he had an execution against Wagner. Stoner went to a lawyer's office and took advice, and then, in the afternoon of the 30th, went to Wagner's farm, and, according to Stoner's testimony, told Wagner the new note and mortgage were no good, and that he wanted the other papers and possession of the stock covered by the old mortgage; that there was an execution against the property, and if he did not get possession of it he could not hold it. Wagner told him he could have possession of the property, and Stoner left the chattels on Wagner's farm, where they had been all the time, and in charge of Wagner and his hired man, Bennett, and put up notices to the effect that Stoner had possession of the property. Stoner testified he did not know whether he got back the old note and old mortgage at the time he made this seizure, but that he got the papers back either that day or the next. Stoner did not surrender the new note and new mortgage, but kept both notes and both mortgages. While Stoner was on his way home from Wagner's farm he met the constable and told him that he, Stoner, owned the property. The constable waited a short time for an indemnifying bond, and upon receiving it, seized the chattels under the executions, and Stoner replevied them.

The new mortgage contained the usual covenant by the mortgagor, that he was lawfully possessed of the property as his own, and that it was free from all incumbrances, and

that he would warrant and defend the same. Appellants claim that as the property was not then free from incumbrances, therefore this was a fraudulent statement, the making of which authorized Stoner, when he learned its falsity, to rescind the contract by which he took the new note and mortgage and surrendered the old papers, and that he did make such a rescission, and that this reinstated him in his former rights under the old note and mortgage then past due; that he was not obliged to seize the property on the day the old note was due, Saturday, as the mortgagor had all that day in which to pay it; and that the mortgagee was entitled to all of the next business day, Monday, in which to foreclose, and that as he seized the property Monday afternoon, his rights were paramount to those of the execution creditors. We are of opinion that this theory was an afterthought. There is no proof Wagner made any such statement when the new mortgage was drawn. It was evidently prepared upon the usual form. Nothing in what was said or done between Stoner and Wagner, after Stoner learned of the executions, indicated that Stoner claimed or thought any false statement had been made to him, or that he had been defrauded by Wagner, or that he sought a rescission. He did not offer back the new securities, as would have been natural if he understood he was rescinding the new contract. We base this conclusion upon the assumption that Stoner's testimony as to the transaction is correct. Wagner gave a different account of what Stoner said as the reason why he wanted the old papers and possession of the chattels, which was less favorable to Stoner's present theory. We are of opinion a rescission for fraud was not attempted, but that Stoner merely discovered he had made a mistake and a blunder, and sought to retrace his steps. The act of 1891 provided a way by which the chattel mortgage could have been extended with safety to Stoner, but he did not pursue that course. The rights of a chattel mortgagee are strictly construed. We hold that Stoner lost his prior lien when he surrendered the old note and mortgage and accepted the the new papers. The judgment is therefore affirmed.